TTL DISTRIBUTION, INC., (Formerly Ups 'N Downs, Inc.), Plaintiff,

v.

LOCAL 99, OFFICE AND DISTRIBUTION EMPLOYEES UNION, INTERNATIONAL LADIES GARMENT WORKERS UNION, AFL–CIO, Defendant.

No. 82 CIV 6471 (LBS).

United States District Court, S.D. New York.

Dec. 1, 1982.

Elarbee, Thompson & Trapnell, Robert L. Thompson, Atlanta, Ga., Halperin, Shivitz, Eisenberg, Schneider & Greenawalt, William S. Greenawalt, New York City, for plaintiff.

Abraham Schlesinger, New York City, for defendant.

## OPINION

SAND, District Judge.

This case is before the Court on the motion of TTL Distribution, Inc. (formerly Ups 'N Downs, Inc.) ("Ups 'N Downs" or "the Employer") to vacate an arbitration award made in favor of the Office and Distribution Employees' Union Local 99, I.L.G.W.U. ("the Union"). The Union has moved for summary judgment against the Employer and to confirm the award pursuant to the United States Arbitration Act, 9 U.S.C. Section 9. Jurisdiction is predicated on Section 301(a) of the Labor Management Relations Act, 29 U.S.C. Section 185(a).

Ups 'N Downs owned and operated a warehouse and distribution center where it employed approximately thirty-five members of the Union pursuant to a collective bargaining agreement. It also owned and operated a chain of approximately 170 retail stores. Prior to shipment to its retail stores, the Employer's merchandise was processed by the warehouse employees. At the end of December, 1981, Ups 'N Downs notified the Union that it had sold all of its retail stores. As a consequence, it decided to close its warehouse and terminate the employment of all the Union members.

The Union sought to arbitrate the Employer's decision to terminate the warehouse employees without ensuring that the Employer's contractual obligations under the contract would be assumed by the buyer of its retail stores. In this regard, the bargaining agreement provided in relevant part:

CONTINUING OBLIGATIONS IN THE EVENT OF SALE OR TRANSFER

34. The Employer agrees that:

1. (I)t will not nor will it permit its subsidiaries and/or affiliates to enter into any partnership, consolidate or merge with, or be absorbed by any person, firm or concern or sell or transfer its or their business, in whole or in part, to any other person, firm or concern unless (a) the new or purchasing firm agrees to be bound under this agreement for the duration hereof and assumes all of the obligations, accrued and otherwise, to the workers, the Union and the Benefit Funds hereunder, and (b) the work forces of the constituent selling or transferring firm and the new or purchasing firm, are merged without loss of employment to any worker, and such resultant work force be covered by all of the provisions of this agreement.

Agreement between Office and Distribution Employees' Union Local 99, I.L.G.W.U. and Women's Apparel Chains Association (the "Agreement"), para. 34 (attached as Exhibit A, Defendant-Petitioner's Petition to Confirm).

A hearing was held on the Union's complaint at which all parties participated. The arbitrator appointed under the Agreement issued a decision in favor of the Union, finding that the employer was required under paragraph 34 to ensure, upon the sale of all or part of its business, that all contractual obligations were assumed by the purchaser. The arbitrator made an award directing the employer to pay back pay, vacation pay, contributions to the Union's Health & Welfare Fund, and damages.

The clause of the collective bargaining agreement allegedly empowering the arbitrator to decide the issues in this case reads, in relevant part, as follows:

All complaints, disputes or grievances arising directly or indirectly between the Union and the Employer or any of his subsidiary, auxiliary and affiliate firms or his or their successors and assigns, involving questions of interpretation, application, performance or operation of any clause of this agreement, or any acts,

conduct or relations between them including, without limitation, any claims against an Employer arising out of any alleged dissolution or termination of his business prior to the expiration of this agreement or any claim against his successors or assigns arising out of any alleged merger with or purchase of assets from another Employer prior to the expiration of this agreement .... shall be referred to a permanent umpire to be known as the Impartial Chairman in the industry, and his decision shall be final and binding upon the Union and the Employer ....

It is the intention and agreement of the Union and the Employer that the procedure established in this agreement for the adjustment of disputes shall be the exclusive means for the determination of all disputes, complaints or grievances specified herein ....

If any issue should arise as to the validity of any provision of this agreement or the arbitrability of this Agreement, substantive or procedural, the Impartial Chairman shall have exclusive jurisdiction to determine such an issue.

Agreement, para. 18.

Ups 'N Downs argues before this Court that despite this very broad grant of arbitration jurisdiction, the award should be vacated as beyond the power of the arbitrator. It bases its argument on paragraph 2 of the Agreement, which provides, in relevant part:

This contract shall apply to and cover workers employed in the following job functions in the establishments (*exclusive of retail stores*) of the Employer and/or any of its subsidiaries and/or affiliates wherever maintained.

Agreement, para. 2. According to its interpretation of paragraph 2, the restrictions upon a sale or transfer imposed by paragraph 34 are inapplicable where the Employer sells its *retail* stores and not its wholesale warehouse. The arbitrator found that the sale of the retail stores constituted a sale of Ups 'N Downs' business within the meaning of paragraph 34, and that such

sale was prohibited unless the purchaser assumed the obligations of the contract with respect to the warehouse employees covered by the Agreement.

The Supreme Court of the United States has made clear that arbitration is the preferred method of dispute resolution in the field of labor relations, and that the federal courts are to defer to the decisions of the arbitrator unless he has clearly acted beyond the scope of his power. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Where the parties have agreed to submit all questions of contract interpretation to the arbitrator, as is the case here, the role of the court is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." *United Steelworkers v. American Manufacturing Co.,* 363 U.S. at 568, 80 S.Ct. at 1346. So long as the arbitrator is acting within the scope of his powers, the court is not to review the merits of the arbitration award. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 596, 599, 80 S.Ct. at 1362. And, as the Second Circuit recently noted in this regard, "(i)f (the) arbitration clause is broad, then we must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration, absent compelling proof to the contrary." *Ottley v. Sheepshead Nursing Home,* 688 F.2d 882, 886 (2d Cir.1982).

Given the narrow scope of our review, we cannot say that the arbitrator exceeded his powers in resolving the dispute between these parties. The arbitration clause contained in paragraph 18 of the collective bargaining agreement is as broad as one could imagine, and clearly evinces an intent to submit all disputes to arbitration,

including disputes over the arbitrability of issues and the breadth of the arbitrator's powers. Where the parties have evidenced such a clear intent that the issue of arbitrability itself be determined by the arbitrator, see *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. at 583 n. 7, 80 S.Ct. at 1353 n. 7, the court should not interfere with the arbitrator's decision.

Moreover, we do not think that the arbitrator derived his authority to decide this case from sources outside the collective bargaining agreement. See *Torrington Co. v. Metal Products Workers Union Local 1645,* 362 F.2d 677, 680 (2d Cir.1966). It is surely a rational reading of the bargaining agreement that paragraph 2 simply defines those employees who are to receive benefits under the contract and does not in any fashion limit the applicability of paragraph 34, which protects the contractual rights of employees in the case of the sale of all or part of the employer's business. Where the arbitrator's award "draws its essence from the collective bargaining agreement," *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361, we cannot refuse to confirm the award because we might have interpreted the contract differently. As the Second Circuit only recently noted, "When arbitrators explain their conclusions ... in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *Andros Compania Maritime v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2d Cir.1978).

The arbitration award is confirmed in all respects. The Union's motion for confirmation and for summary judgment is granted. The Employer's motion to vacate the award and for summary judgment is denied.

SO ORDERED.